**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| ANGELA THURMAN, | ) | |
| DEXTER SCOTT, | ) | |
| RANDOLPH CHARLES JONES, | ) | **CIVIL ACTION** |
| CHRIS DARROUX, | ) | **FILE NO.:** |
| and MAURICE THOMPSON, | ) | |
|     Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| ZODIAC SERVICES AMERICAS | ) | **JURY TRIAL DEMANDED** |
| LLC, PDS TECH, INC., and | ) | |
| JOHNSON SERVICE GROUP, | ) | |
| INC., | ) | |
|     Defendants. | ) | |

## <u>COMPLAINT</u>

Plaintiffs Angela Thurman, Dexter Scott, Randolph Charles Jones, Chris Darroux, and Maurice Thompson, through undersigned counsel, sue Defendants Zodiac Services Americas LLC,  PDS Tech, Inc., and Johnson Service Group, Inc. for discrimination on the basis of race under Title VII of the Civil Rights Act of 1964 as amended, including the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.* ("Title VII") and  28 U.S.C. § 1981 ("Section 1981"), as well as for retaliation under 42 U.S.C. § 2000e-3(a) ("Retaliation"), demanding trial by jury and stating as follows:

1

## OVERVIEW

1.     Defendants discriminated against the African-American Plaintiffs by paying Caucasians more money for the same work, by placing less experienced Caucasians in permanent positions ahead of Plaintiffs, and by promoting Caucasians ahead of Plaintiffs who had more experience in the industry as well as time on the job.

## JURISDICTION AND VENUE

2.     The claims herein present federal questions, and jurisdiction of this Court is predicated under 42 U.S.C. § 2000e and 28 U.S.C. § 1331.

3.     Venue is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e. The unlawful acts alleged below were committed in the Northern District of Georgia.

4.     Beginning in August 2014, each Plaintiff timely filed a charge at the Atlanta District Office of the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged discrimination or retaliation pursuant to 42 U.S.C. § 2000e-5. Plaintiffs each received letters from the EEOC granting the right to sue.

## PARTIES

5.     Plaintiff Angela Thurman resides in Marietta, Georgia, in Cobb County, and is subject to the jurisdiction of this Court.

6.     Plaintiff Dexter Scott resides in Morrow, Georgia, in Clayton County, and is subject to the jurisdiction of this Court.

7.     Plaintiff Randolph Charles Jones resides in Hampton, Georgia, in Henry County, and is subject to the jurisdiction of this Court.

8.     Plaintiff Chris Darroux resides in Newnan, Georgia, in Coweta County, and is subject to the jurisdiction of this Court.

9.     Plaintiff Maurice Thompson resides in Ellenwood, Georgia, in DeKalb County, and is subject to the jurisdiction of this Court.

10.     Defendant Zodiac Services Americas LLC ("Zodiac") is a Delaware corporation, with a warehouse and principle place of business at 4900 Saint Joe Boulevard, Building 200, #400, College Park, Georgia 30354. Zodiac is subject to the jurisdiction of this court as it is registered to do business in Georgia and regularly conducts business from the warehouse where all Plaintiffs were employed.  Zodiac is in the business of manufacturing replacement parts for aircrafts.

11.    Zodiac can be served through its registered agent Corporation Service Company at 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

12.    Zodiac at all relevant times has employed more than 15 employees.

13.    Defendant PDS Tech, Inc. ("PDS Tech.") is a Washington corporation, with its principle place of business at 1925 W. John Carpenter Freeway, Suite 550, Irving, Texas 75063. PDS Tech supplies temporary staff to Fortune 500 companies for aerospace and defense engineering positions.

14.    PDS Tech. is registered to do business in Georgia and regularly conducts business from its location at 900 Old Roswell Lakes Parkway, Suite 310, Roswell, Georgia 30076. PDS Tech. can be served through its registered agent National Corporate Research, Ltd. at 900 Old Roswell Lakes Parkway, Suite 310, Roswell, Georgia 30076.

15.    PDS Tech. at all relevant times has employed more than 15 employees.

16.    Defendant Johnson Service Group, Inc. ("JSG") is a Delaware corporation, with its principle place of business at 475 S. Frontage Road, #103, Burr Ridge, Illinois 60527. JSG is an engineer recruiting firm that places qualified candidates at appropriate locations.

17.   JSG is registered to do business in Georgia and regularly conducts business from its location at 1201 Peachtree Street, NE, Atlanta, Georgia 30361. JSG can be served through its registered agent CT Corporation Services at 1201 Peachtree Street, NE, Atlanta, Georgia 30361.

18.   JSG at all relevant times has employed more than 15 employees.

19.   All Defendants have sufficient contacts with the State of Georgia based on the allegations herein that this Court's exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice under Georgia's long-arm statute, O.C.G.A. § 9-10-91.

## FACTUAL ALLEGATIONS
### Background

20.   Zodiac Services is a subsidiary of Zodiac Aerospace S.A., a French company that manufactures aerospace equipment for commercial, regional, and business aircrafts.

21.   Zodiac, located in College Park, offers a broad scope of aftermarket services such as manufacturing, repairing, and is an original equipment manufacturer for aircraft parts.

22.   PDS Tech. is a recruiting firm that specializes in supplying temporary aerospace and defense engineers, IT staff, and IT project support.

23.     JSG is a cross-industry temporary staffing firm that places individuals in aerospace, aviation maintenance, engineering and technical support, information technology, labor and manufacturing, payroll services, pharmaceutical and life sciences, power and utilities, engineering project services, and telecommunications.

## General Facts

24.     Zodiac typically begins a relationship with a worker by having a staffing company place the worker at Zodiac's warehouse.

25.     In the case of all Plaintiffs, these assignments were temp-to-permanent placements where after 90 days of working at the Zodiac warehouse the Plaintiff was to become a permanent Zodiac employee with a net increase in pay.

26.     All Plaintiffs were classified in the position of Material Control Specialists, which includes "pickers," "runners," and "receiving clerks."

27.     As Material Control Specialists, they are required to receive and stock inventory as well as verify the quantity, ensure the inventory is protected from damage, pull parts from stock to support Sales Orders, ensure inventory records are maintained, abide by Hazardous Material Shipping regulations, comply with domestic and international shipping restrictions, and enforce stockroom safety and security.

6

28.   Mr. Scott, Mr. Jones, and Mr. Thompson were classified as "pickers."

29.   Ms. Thurman was classified as a "runner."

30.   Mr. Darroux was classified as a "receiving clerk."

31.   Zodiac required persons in the position of Material Control Specialist to have at least three (3) years of warehouse experience. However, Zodiac allowed the temporary agencies to place Caucasians who did not meet that qualification, including Ms. Jessica Smith. Ms. Smith, a Caucasian female, started with Zodiac in March of 2014 as a 90 day temp-to-permanent placement as a picker. Zodiac also made permanent, Caucasians who did not meet that qualification, ahead of African-Americans with the qualification, including Ms. Smith becoming permanent ahead of Ms. Thurman and Mr. Darroux in June of 2014.

32.   Zodiac also treated at least three Caucasian employees more favorably than African-Americans. In addition to Ms. Smith, Kerry William Bailey and Thomas Hawks were treated more favorably than African-Americans. Mr. Bailey, Ms. Smith, and Mr. Hawks received permanent positions ahead of African-Americans. Mr. Bailey, Ms. Smith, and Mr. Hawks received pay raises ahead of African-Americans. And Mr. Bailey, Ms. Smith, and Mr. Hawks were promoted out of temporary positions ahead of African-Americans.

33.     Mr. Bailey, a Caucasian male, was hired by Zodiac in January 2014 as a 90 day temp-to-permanent picker being paid approximately $12/hour.   Mr. Bailey has ten (10) years of warehouse experience. After three (3) months, Mr. Bailey was offered a permanent picker position with Zodiac in March and given a raise to approximately $12.75/hour. In May of the same year, Mr. Bailey was promoted to the position of Quality Inspector after only two (2) months. No posting was made before he was given the responsibilities of Quality Inspector.

34.     Mr. Hawks, a Caucasian male, was hired by Zodiac through PDS Tech. approximately in July 2014 as a 90 day temp-to-permanent quality inspector.

35.     The Quality Inspector is responsible for: maintaining the Quality Control Manual; keeping a current file of pertinent CFR's, specifications, types, certification data sheets, and airworthiness directives; ensuring all incoming, hidden damage, in-progress, assembly, test, and final inspections of all components and accessories processed by the repair station are completed; making certain no defective, unserviceable, or un-airworthy parts are installed in any component or articles released by the repair station; providing continuity of inspection; and seeing that rejected and unserviceable parts are handled to prevent their reuse.

36.     The Quality Inspector is required to have a high school diploma, two (2) years of experience in the field as well as specialized training.

8

37.    After Mr. Bailey's de facto promotion, on or about June 10, 2014, Zodiac posted the Quality Inspector position. Mr. Bailey was interviewed for the Quality Inspector position on June 12, 2014.

38.    Zodiac's handbook specifically states that an employee may only be eligible for a posting after performing their current position for at least 180 calendar days. Neither Mr. Bailey nor Mr. Hawks had the requisite time on the job.

39.    On June 12, 2014, Ms. Smith was also interviewed by Zodiac for the Quality Inspector position. Ms. Smith was not qualified for the Quality Inspector position and she had a write-up on her record. African-Americans were told they could not apply if they had a write-up on their records.

40.    Only a few African-Americans were interviewed for the Quality Inspector position including Mr. Thompson and Ms. Thurman, each of whom did not have any write ups.

41.    Mr. Bailey was given the Quality Inspector position. However, he was temporarily removed from that position from July 28, 2014, to July 30, 2014, while Zodiac underwent an audit.

42.    Following the audit and contact by the EEOC in response to the Plaintiffs' filed charges, on September 23, 2014, Zodiac re-posted the Quality Inspector position, renaming it as a Material Control Specialist-Debatch, but

9

maintaining the same Zodiac posting number – Requisitions #127 – and adding qualifications.

43.     The Material Control Specialist-Debatch position now additionally required a candidate to have Bombardier VIP program certification, Zodiac Services Quality Management system training, and scale count machine training.

44.     In order for a candidate to have Bombardier certification, they must have completed the Bombardier training and certification course.

45.     After the EEOC investigation concluded and the EEOC began issuing Right to Sue letters, on November 3, 2014, Mr. Bailey officially received the position of Material Control Specialist-Debatch, although he is not a certified Bombardier.

46.     After about five (5) months, on December 16, 2014, Mr. Hawks was given a permanent position as a Material Control Specialist-Debatch, a position that was not posted or made available to other individuals, despite not being a certified Bombardier.

### Facts Specific to Plaintiff Angela Thurman

47.     Plaintiff Angela Thurman started as a runner with Zodiac on July 8, 2013, through PDS Tech., an employment staffing agency, as a 90-day temp-to-permanent hire being paid approximately $12.50/hour. Ms. Thurman started

performing picker duties between May and June of 2014, however, she is still classified as a runner with no pay increase.

48.    As Ms. Thurman's temporary employment company, PDS Tech. is her primary employer. However, because Ms. Thurman has worked full-time at the Zodiac warehouse for over one (1) year and Zodiac controls her working hours and conditions, Zodiac and PDS Tech. are joint employers.

49.    Contrary to the terms under which she was placed, Ms. Thurman was not permanently hired by Zodiac after 90 days. Neither was Ms. Thurman given a raise after 90 days of employment.

50.    Ms. Thurman has over twenty (20) years of warehouse experience.

51.    Ms. Thurman reported the racial discrimination to James Betz, an Office Representative of PDS Tech., in March, June, and October of 2014. PDS Tech. did nothing in response to Ms. Thurman's complaint of discrimination while at Zodiac.

52.    As of the filing of this Complaint, Ms. Thurman has not been offered a permanent position at Zodiac.

53.    In contrast, Mr. Bailey, Ms. Smith, and Mr. Hawks all began work after Ms. Thurman and were made permanent and given raises ahead of Ms. Thurman.

54.    Ms. Thurman also applied for the Quality Inspector position, but was not interviewed and was told that she did not possess the required qualifications.

55.    Ms. Thurman's employment history with Zodiac does not include a single disciplinary action yet she was not promoted. Ms. Smith, who has at least one write-up, was promoted twice.

56.    Despite being well qualified for the Quality Inspector position, Ms. Thurman was informed on July 2, 2014, by Zodiac they had chosen another candidate.

57.    Mr. Bailey, who was not qualified, was acting as the Quality Inspector.

58.    On October 20, 2014, Ms. Thurman timely filed a charge of discrimination against Zodiac at the Atlanta District Office of the EEOC, a copy of which is attached as Exhibit A. On December 19, 2014, the EEOC issued Ms. Thurman a notice of her right to sue, a copy of which is attached as Exhibit B. Ms. Thurman has complied with all conditions precedent to institute this action.

59.    On October 20, 2014, Ms. Thurman also timely filed a charge of discrimination against PDS Tech. at the Atlanta District Office of the EEOC, a copy of which is attached as Exhibit C. On December 19, 2014, the EEOC issued

Ms. Thurman a notice of her right to sue, a copy of which is attached as Exhibit D. Ms. Thurman has complied with all conditions precedent to institute this action.

### Facts Specific to Plaintiff Dexter Scott

60.     Plaintiff Dexter Scott started as a picker with Zodiac in March 2011 through Aeroteck, an employment staffing agency, as a 90 day temp-to-permanent hire being paid approximately $12.50/hour.

61.     Contrary to the terms under which he was placed, Mr. Scott was not permanently hired by Zodiac after 90 days. Neither was Mr. Scott given a raise after 90 days of employment.

62.     Mr. Scott has more than thirty-six (36) years of warehouse experience.

63.     Mr. Scott continued to work as a temp-to-permanent hire until March 4, 2012, when he was brought on permanently with Zodiac after twelve (12) months without a pay raise.

64.     In contrast, Mr. Bailey, with only ten (10) years of warehouse experience, Ms. Smith, with none, and Mr. Hawks with more than thirty (30) years all began work after Mr. Scott and were made permanent and given raises in a shorter time period than Mr. Scott.

65.     Mr. Scott was also subjected to an abusive and racially hostile working environment at Zodiac because of his race. Around March or April 2013,

Mr. Scott was physically assaulted while he was working a forklift by a Panamanian co-worker because of his race.

66.   On July 15, 2014, Johnny Cannone, a Caucasian male co-worker called Mr. Scott a "black mother fucker."  Mr. Scott complained to Jim Gillespie, Zodiac's Caucasian Vice President, on July 15, 2014. However Mr. Gillespie refused to fire or discipline Cannone.

67.   On November 3, 2014, Mr. Scott timely filed a charge of discrimination against Zodiac at the Atlanta District Office of the EEOC, a copy of which is attached as Exhibit E. On November 18, 2014, the EEOC issued Mr. Scott a notice of his right to sue, a copy of which is attached as Exhibit F. Mr. Scott has complied with all conditions precedent to institute this action.

**Facts Specific to Plaintiff Randolph Charles Jones**

68.   Plaintiff Randolph Charles Jones started as a picker with Zodiac in August 27, 2012 through Aeroteck, an employment staffing agency, as a 90 day temp-to-permanent hire being paid approximately $12.50/hour.

69.   Contrary to the terms under which he was placed, Mr. Jones was not permanently hired by Zodiac after 90 days. Neither was Mr. Jones given a raise after 90 days of employment.

70.     Mr. Jones has more than twenty-six (26) years of warehouse experience.

71.     Mr. Jones continued to work as a temp-to-permanent hire until July 22, 2013, when he was brought on permanently with Zodiac after eleven (11) months without a pay raise.

72.     In contrast, Mr. Bailey, Ms. Smith and Mr. Hawks all began work after Mr. Jones and were made permanent and given raises in a shorter time period than Mr. Jones.

73.     On August 4, 2014, Mr. Jones timely filed a charge of discrimination against Zodiac at the Atlanta District Office of the EEOC, a copy of which is attached as Exhibit G. On November 12, 2014, the EEOC issued Mr. Jones a notice of his right to sue, a copy of which is attached as Exhibit H. Mr. Jones has complied with all conditions precedent to institute this action.

74.     Following his EEOC race discrimination charge, Mr. Jones was disciplined by Zodiac on October 30, 2014 for being absent from work on October 29, 2014, a day that was previously approved as a vacation day. Further, Mr. Jones was put on a two-day suspension without pay on December 15, 2014, for requesting a copy of his personnel file.

75.     On December 16, 2014, Mr. Jones timely filed a charge of retaliation against Zodiac at the Atlanta District Office of the EEOC, a copy of which is attached as Exhibit I. On December 16, 2014, the EEOC issued Mr. Jones a notice of his right to sue, a copy of which is attached as Exhibit J. Mr. Jones has complied with all conditions precedent to institute this action.

### Facts Specific to Plaintiff Chris Darroux

76.     Plaintiff Chris Darroux started as a receiving clerk with Zodiac on August 26, 2013 through JSG, an employment staffing agency, as a 90 day temp-to-permanent hire being paid approximately $12.50/hour.

77.     As Mr. Darroux's temporary employment company, JSG is his primary employer. However, because Mr. Darroux had worked full-time at the Zodiac warehouse for one (1) year and Zodiac controlled his working hours and conditions, Zodiac and JSG are joint employers.

78.     Contrary to the terms under which he was placed, Mr. Darroux was not permanently hired by Zodiac after 90 days of employment. Neither was Mr. Darroux given a raise after 90 days of employment.

79.     Mr. Darroux has more than five (5) years of warehouse experience.

80.     Mr. Darroux was never hired permanently by Zodiac, despite working there for one (1) year.

81.     In contrast, Mr. Bailey, Ms. Smith, and Mr. Hawks all began work after Mr. Darroux and were made permanent and given raises ahead of Mr. Darroux.

82.     Mr. Darroux notified both James Roberts and Alice Gant at JSG of the racial discrimination he was experiencing while at Zodiac. Mr. Roberts told Mr. Darroux he would only create problems by complaining, and Ms. Gant told Mr. Darroux of only one other placement opportunity, however, JSG never changed his placement.

83.     Mr. Darroux complained to Zodiac about the payments to Caucasians at a greater rate for equal work, the placements of less experienced Caucasians in permanent positions ahead of African-Americans, and the promotion of Caucasians ahead of African-Americans who had more experience in the industry as well as time on the job.

84.     Two days after he complained, Mr. Darroux was discharged by Zodiac.

85.     On August 8, 2014, Mr. Darroux timely filed a charge of discrimination and retaliation against Zodiac at the Atlanta District Office of the EEOC, a copy of which is attached as Exhibit K. On December 10, 2014, the EEOC issued Mr. Darroux a notice of his right to sue, a copy of which is attached

as Exhibit L. Mr. Darroux has complied with all conditions precedent to institute this action.

86.    On November 25, 2014, Mr. Darroux also timely filed a charge of discrimination against JSG at the Atlanta District Office of the EEOC, a copy of which is attached as Exhibit M. On December 10, 2014, the EEOC issued Mr. Darroux a notice of his right to sue, a copy of which is attached as Exhibit N. Mr. Darroux has complied with all conditions precedent to institute this action.

**Facts Specific to Plaintiff Maurice Thompson**

87.    Plaintiff Maurice Thompson started as a picker with Zodiac in May 2011 through Aeroteck, an employment staffing agency, as a 90 day temp-to-permanent hire being paid approximately $12.50/hour.

88.    Contrary to the terms under which he was placed, Mr. Thompson was not permanently hired by Zodiac after 90 days. Neither was Mr. Thompson given a raise after 90 days of employment.

89.    Mr. Thompson has more than twenty (20) years of warehouse and supervisor experience.

90.    Mr. Thompson continued to work as a temp-to-permanent hire until March 4, 2012, when he was brought on permanently with Zodiac after ten (10) months without a pay raise.

91.     In contrast, Mr. Bailey, Ms. Smith and Mr. Hawks all began work after Mr. Thompson and were made permanent and given raises in a shorter time period than Mr. Thompson.

92.     Mr. Thompson also applied for the Quality Inspector position, but was not interviewed and was told that he did not possess the required qualifications.

93.     Mr. Thompson's employment history with Zodiac does not include a single disciplinary action yet he was not promoted, however Ms. Smith, who has at least one write-up, was promoted twice.

94.     Despite being well qualified for the Quality Inspector position, Mr. Thompson was informed on July 23, 2014, by Zodiac they had chosen another candidate.

95.     Mr. Bailey, who was not qualified, was acting as the Quality Inspector.

96.     On August 4, 2014, Mr. Thompson timely filed a charge of discrimination against Zodiac at the Atlanta District Office of the EEOC, a copy of which is attached as Exhibit O. On October 21, 2014, the EEOC issued Mr. Thompson a notice of his right to sue, a copy of which is attached as Exhibit P. Mr. Thompson has complied with all conditions precedent to institute this action.

97. When Zodiac re-posted the Quality Inspector position – Requisitions #127 – and renamed it the Material Control Specialist-Debatch. Mr. Thompson did not apply because of the added requirements as he is not a certified Bombardier.

98. Despite not being qualified, Mr. Bailey received the position of Material Control Specialist-Debatch on November 3, 2014.

99. Despite also not being qualified, Mr. Hawks received the position of Material Control Specialist-Debatch on December 16, 2014.

100. The actions described above were the product of race discrimination and were not the product of any legitimate, non-discriminatory, non-retaliatory purposes, motive or intent.

## COUNT I: RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF PLAINTIFF THURMAN BY DEFENDANT ZODIAC AND DEFENDANT PDS TECH.

101. Plaintiff Thurman incorporates by reference Paragraphs 1 through 46, Paragraphs 47 through 59, and Paragraph 100 as if fully set forth herein.

102. Zodiac subjected Ms. Thurman to racial discrimination at its warehouse when it placed less experienced Caucasians in permanent positions ahead of Ms. Thurman, and promoted those Caucasians ahead of Ms. Thurman.

103. At all times relevant, Defendant Zodiac was an "employer" as defined in 42 U.S.C. § 2000e(b).

104.   PDS Tech. subjected Ms. Thurman to racial discrimination when it knew or should have known of Zodiac's discrimination and PDS Tech. failed to take prompt corrective action.

105.   At all times relevant, Defendant PDS Tech. was an "employment agency" as defined in 42 U.S.C. § 2000e(c) as PDS Tech. is in the business of regularly procuring employees for opportunities to work for an "employer."

106.   As an employment agency, PDS Tech. was responsible for taking adequate corrective action after being put on notice that Ms. Thurman was being discriminated against by Zodiac.

107.   Because both entities exercised control over Ms. Thurman, both Defendant Zodiac and Defendant PDS Tech. are joint employers of Ms. Thurman under 29 C.F.R. 825.106.

108.   PDS Tech. was put on actual notice when in March, June, and October of 2014 Ms. Thurman reported to James Betz, an Office Representative of PDS Tech. that Caucasian workers with less experience were being placed in permanent positions ahead of Ms. Thurman, and Caucasians were being promoted ahead of Ms. Thurman.

109.   PDS Tech. was put on constructive notice and should have known that Ms. Thurman was being discriminated against by Zodiac because Ms. Thurman

was not offered a permanent position after 90 days of working at the Zodiac warehouse and is still not a permanent employee after working there for more than a year.

110.   PDS Tech. did not take adequate corrective action when informed of the discrimination against Ms. Thurman since PDS Tech. did not insist Zodiac conduct an investigation of the alleged discrimination, nor did PDS Tech. assert the right of Ms. Thurman to be free from unlawful discrimination, nor did PDS Tech. provide Ms. Thurman with another placement opportunity that she requested.

111.   To prove race discrimination, Ms. Thurman asserts that: (1) she is a member of a particular race; (2) she was subjected to an adverse employment action; and (3) she was treated less favorably than similarly situated employees who were not members of the same race.

112.   Ms. Thurman asserts that as an African-American, she is a member of a protected group.

113.   Ms. Thurman suffered adverse employment actions when: Caucasian workers were placed in permanent positions ahead of her; Caucasians with less experience in the industry as well as less time on the job were promoted ahead of her; and she was denied permanent employment.

22

114.   Caucasian workers were hired into permanent positions by Zodiac more quickly than Ms. Thurman who has still not been offered a permanent post after more than a year.

115.   Caucasian workers with less experience in the industry and less time on the job were promoted ahead of Ms. Thurman, who has more than twenty (20) years of warehouse experience.

116.   The discrimination complained of was based upon Ms. Thurman's race and altered the terms, conditions, and privileges of her employment.

117.   Zodiac acted in violation of 42 U.S.C. § 2000e *et seq.* ("Title VII").

118.   Zodiac willfully and wantonly disregarded Ms. Thurman's rights by discriminating against her in bad faith on the basis of her race.

119.   As a result of Zodiac's unlawful actions, Ms. Thurman has suffered emotional distress, humiliation, and other indignities, as well as economic harm.

120.   PDS Tech. acted in violation of 42 U.S.C. § 2000e *et seq.* ("Title VII").

121.   PDS Tech. willfully and wantonly disregarded Ms. Thurman's rights by discriminating against her in bad faith on the basis of her race.

122.  As a result of PDS Tech.'s unlawful actions, Ms. Thurman has suffered emotional distress, humiliation, and other indignities, as well as economic harm.

## COUNT II: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981 OF PLAINTIFF THURMAN BY DEFENDANT ZODIAC AND DEFENDANT PDS TECH.

123.  Ms. Thurman incorporates by reference Paragraphs 1 through 46, Paragraphs 47 through 59, and Paragraph 100 as if fully set forth herein.

124.  Zodiac subjected Ms. Thurman to racial discrimination at its warehouse when it placed less experienced Caucasians in permanent positions ahead of Ms. Thurman, and promoted those Caucasians ahead of Ms. Thurman.

125.  PDS Tech. subjected Ms. Thurman to racial discrimination when it knew or should have known of Zodiac's discrimination and PDS Tech. failed to take prompt corrective action.

126.  As an employment agency, PDS Tech. was responsible for taking adequate corrective action after being put on notice that Ms. Thurman was being discriminated against by Zodiac.

127.  Because both entities exercised control over Ms. Thurman, both Defendant Zodiac and Defendant PDS Tech. are joint employers of Ms. Thurman under 29 C.F.R. 825.106.

24

128.   PDS Tech. was put on actual notice when in March, June, and October of 2014 Ms. Thurman reported to James Betz, an Office Representative of PDS Tech. that Caucasian workers with less experience were being placed in permanent positions ahead of Ms. Thurman, and Caucasians were being promoted ahead of Ms. Thurman.

129.   PDS Tech. was put on constructive notice and should have known that Ms. Thurman was being discriminated against by Zodiac because Ms. Thurman was not offered a permanent position after 90 days of working at the Zodiac warehouse and is still not a permanent employee after working there for more than a year.

130.   PDS Tech. did not take adequate corrective action when informed of the discrimination against Ms. Thurman since PDS Tech. did not insist Zodiac conduct an investigation of the alleged discrimination, nor did PDS Tech. assert the right of Ms. Thurman to be free from unlawful discrimination, nor did PDS Tech. provide Ms. Thurman with another placement opportunity that she requested.

131.   To prove race discrimination, Ms. Thurman asserts that: (1) she is a member of a particular race; (2) she was subjected to an adverse employment

action; and (3) she was treated less favorably than similarly situated employees who were not members of the same race.

132.   Ms. Thurman asserts that as an African-American, she is a member of a protected group.

133.   Ms. Thurman suffered adverse employment actions when: Caucasian workers were placed in permanent positions ahead of her; Caucasians with less experience in the industry as well as less time on the job were promoted ahead of her; and she was denied permanent employment.

134.   Caucasian workers were hired into permanent positions by Zodiac more quickly than Ms. Thurman who has still not been offered a permanent post after more than a year.

135.   Caucasian workers with less experience in the industry and less time on the job were promoted ahead of Ms. Thurman, who has more than twenty (20) years of warehouse experience.

136.   The discrimination complained of was based upon Ms. Thurman's race and altered the terms, conditions, and privileges of her employment.

137.   Zodiac acted in violation of 28 U.S.C. § 1981 ("Section 1981").

138.   Zodiac willfully and wantonly disregarded Ms. Thurman's rights by discriminating against her in bad faith on the basis of her race.

139.   As a result of Zodiac's unlawful actions, Ms. Thurman has suffered emotional distress, humiliation, and other indignities, as well as economic harm.

140.   PDS Tech. acted in violation of 28 U.S.C. § 1981 ("Section 1981").

141.   PDS Tech. willfully and wantonly disregarded Ms. Thurman's rights by discriminating against her in bad faith on the basis of her race.

142.   As a result of PDS Tech.'s unlawful actions, Ms. Thurman has suffered emotional distress, humiliation, and other indignities, as well as economic harm.

143.   Accordingly, Ms. Thurman is entitled to compensatory and punitive damages, including back pay and benefits to which she would have been entitled had the discriminatory practices not occurred, and attorneys' fees and costs associated with bringing this action pursuant to 42 U.S.C. § 1981.

## COUNT III: RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF PLAINTIFF SCOTT BY DEFENDANT ZODIAC

144.   Plaintiff Scott incorporates by reference Paragraphs 1 through 46, Paragraphs 61 through 67, and Paragraph 100 as if fully set forth herein.

145.   Zodiac subjected Mr. Scott to racial discrimination at its warehouse when it paid Caucasians at a greater rate for equal work; placed less experienced Caucasians in permanent positions in a shorter time period than Mr. Scott; and promoted those Caucasians in a shorter time period than Mr. Scott.

146.   At all times relevant, Defendant Zodiac was an "employer" as defined in 42 U.S.C. § 2000e(b).

147.   To prove race discrimination, Mr. Scott asserts that: (1) he is a member of a particular race; (2) he was subjected to an adverse employment action; and (3) he was treated less favorably than similarly situated employees who were not members of the same race.

148.   Mr. Scott asserts that as an African-American, he is a member of a protected group.

149.   Mr. Scott suffered adverse employment actions when: Caucasian workers were placed in permanent positions ahead of  him; and Caucasians with less experience in the industry as well as less time on the job were promoted in a shorter time period than him.

150.   Caucasian workers were hired into permanent positions by Zodiac more quickly than Mr. Scott who was offered a permanent post after twelve (12) months.

151.   Caucasian workers were given raises after becoming permanent with Zodiac, whereas Mr. Scott was not given a raise when he became permanent.

152.   Caucasian workers with less experience in the industry and less time on the job were promoted ahead of Scott, who has more than thirty-six (36) years of warehouse experience.

153.   The discrimination complained of was based upon Mr. Scott's race and altered the terms, conditions, and privileges of his employment.

154.   Zodiac acted in violation of 42 U.S.C. § 2000e *et seq.* ("Title VII").

155.   Zodiac willfully and wantonly disregarded Mr. Scott's rights by discriminating against him in bad faith on the basis of his race.

156.   As a result of Zodiac's unlawful actions, Mr. Scott has suffered emotional distress, humiliation, and other indignities, as well as economic harm.

### COUNT IV: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981 OF PLAINTIFF SCOTT BY DEFENDANT ZODIAC

157.   Mr. Scott incorporates by reference Paragraphs 1 through 46, Paragraphs 60 through 67, and Paragraph 100 as if fully set forth herein.

158.   Zodiac subjected Mr. Scott to racial discrimination at its warehouse when it paid Caucasians at a greater rate for equal work; placed less experienced Caucasians in permanent positions in a shorter time period than Mr. Scott; and promoted those Caucasians in a shorter time period than Mr. Scott.

159.   Zodiac subjected Mr. Scott to an abusive and racially hostile working environment when it allowed Mr. Scott to be both physically and verbally assaulted by non-African-American co-workers.

160.   To prove race discrimination, Mr. Scott asserts that: (1) he is a member of a particular race; (2) he was subjected to an adverse employment action; and (3) he was treated less favorably than similarly situated employees who were not members of the same race.

161.   Mr. Scott asserts that as an African-American, he is a member of a protected group.

162.   Mr. Scott suffered adverse employment actions when: Caucasian workers were placed in permanent positions ahead of  him; and Caucasians with less experience in the industry as well as less time on the job were promoted in a shorter time period than him.

163.   Caucasian workers were hired into permanent positions by Zodiac more quickly than Mr. Scott who was offered a permanent post after twelve (12) months.

164.   Caucasian workers were given raises after becoming permanent with Zodiac, whereas Mr. Scott was not given a raise when he became permanent.

165.   Caucasian workers with less experience in the industry and less time on the job were promoted ahead of Scott, who has more than thirty-six (36) years of warehouse experience.

166.   The discrimination complained of was based upon Mr. Scott's race and altered the terms, conditions, and privileges of his employment.

167.   Zodiac acted in violation of 28 U.S.C. § 1981 ("Section 1981").

168.   Zodiac willfully and wantonly disregarded Mr. Scott's rights by discriminating against him in bad faith on the basis of his race.

169.   As a result of Zodiac's unlawful actions, Mr. Scott has suffered emotional distress, humiliation, and other indignities, as well as economic harm.

170.   Accordingly, Mr. Scott is entitled to compensatory and punitive damages, including back pay and benefits to which he would have been entitled had the discriminatory practices not occurred, and attorneys' fees and costs associated with bringing this action pursuant to 42 U.S.C. § 1981.

### COUNT V: HOSTILE WORKPLACE IN VIOLATION OF 42 U.S.C. § 1981 OF PLAINTIFF SCOTT BY DEFENDANT ZODIAC

171.   Mr. Scott incorporates by reference Paragraphs 1 through 46, Paragraphs 60 through 67, and Paragraph 100 as if fully set forth herein.

172.  Mr. Scott was also subjected to a hostile workplace that was permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of his employment and created an abusive working environment.

173.  Zodiac subjected Mr. Scott to an abusive and racially hostile working environment when it allowed Mr. Scott to be both physically and verbally assaulted by non-African-American co-workers.

174.  To prove a hostile work environment, Mr. Scott asserts that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his protective characteristic; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and created a discriminatorily abusive working environment; and (5) the employer is responsible for such an environment under either vicarious or direct liability.

175.  Mr. Scott asserts that as an African-American, he is a member of a protected group.

176.  Mr. Scott was subjected to unwelcome harassment when he was physically assaulted by a Panamanian co-worker and was verbally assaulted by a Caucasian co-worker.

177. The harassment complained of was based upon Mr. Scott's race and was sufficiently severe or pervasive to alter the terms, conditions, and privileges of his employment as the Caucasian individual was not reprimanded for his actions and Mr. Scott perceived this harassment as abusive based upon his race.

178. Zodiac is directly liable for the racial hostile work environment because:

  a. Zodiac had actual knowledge that Mr. Cannone, a co-worker, was racially harassing Mr. Scott and Zodiac did not take prompt remedial measures to stop or reprimand Mr. Cannone's harassment;

  b. The harassment violated Zodiac's non-delegable duty to provide a workplace free from harassment; and

  c. Mr. Scott reported this harassment to Vice President Jim Gillespie.

179. As a result of Zodiac's unlawful actions, Mr. Scott has suffered pain, suffering, emotional distress, humiliation, and other indignities, as well as economic harm.

## COUNT VI: RACE DISCRIMINATION IN VIOLATION OF
## TITLE VII OF PLAINTIFF JONES BY DEFENDANT ZODIAC

180.   Plaintiff Jones incorporates by reference Paragraphs 1 through 46, Paragraphs 68 through 75, and Paragraph 100 as if fully set forth herein.

181.   Zodiac subjected Mr. Jones to racial discrimination at its warehouse when it paid Caucasians at a greater rate for equal work, placed less experienced Caucasians in permanent positions ahead of Mr. Jones, and promoted those Caucasians ahead of Mr. Jones.

182.   At all times relevant, Defendant Zodiac was an "employer" as defined in 42 U.S.C. § 2000e(b).

183.   To prove race discrimination, Mr. Jones asserts that: (1) he is a member of a particular race; (2) he was subjected to an adverse employment action; and (3) he was treated less favorably than similarly situated employees who were not members of the same race.

184.   Ms. Jones asserts that as an African-American, he is a member of a protected group.

185.   Mr. Jones suffered adverse employment actions when: Caucasian workers were placed in permanent positions ahead of him; and Caucasians with less experience in the industry as well as less time on the job were promoted ahead of him.

34

186. Caucasian workers were hired into permanent positions by Zodiac more quickly than Mr. Jones who was offered a permanent post after twelve (12) months.

187. Caucasian workers were given raises after becoming permanent with Zodiac, whereas Mr. Jones was not given a raise when he became permanent.

188. Caucasian workers with less experience in the industry and less time on the job were promoted ahead of Mr. Jones, who has more than twenty-six (26) years of warehouse experience.

189. The discrimination complained of was based upon Mr. Jones's race and altered the terms, conditions, and privileges of his employment.

190. Zodiac acted in violation of 42 U.S.C. § 2000e *et seq.* ("Title VII").

191. Zodiac willfully and wantonly disregarded Mr. Jones's rights by discriminating against him in bad faith on the basis of his race.

192. As a result of Zodiac's unlawful actions, Mr. Jones has suffered emotional distress, humiliation, and other indignities, as well as economic harm.

## COUNT VII: DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981 OF PLAINTIFF JONES BY DEFENDANT ZODIAC

193. Plaintiff Jones incorporates by reference Paragraphs 1 through 46, Paragraphs 68 through 75, and Paragraph 100 as if fully set forth herein.

194.   Zodiac subjected Mr. Jones to racial discrimination at its warehouse when it paid Caucasians at a greater rate for equal work, placed less experienced Caucasians in permanent positions ahead of Mr. Jones, and promoted those Caucasians ahead of Mr. Jones.

195.   To prove race discrimination, Mr. Jones asserts that: (1) he is a member of a particular race; (2) he was subjected to an adverse employment action; and (3) he was treated less favorably than similarly situated employees who were not members of the same race.

196.   Ms. Jones asserts that as an African-American, he is a member of a protected group.

197.   Mr. Jones suffered adverse employment actions when: Caucasian workers were placed in permanent positions ahead of him; and Caucasians with less experience in the industry as well as less time on the job were promoted ahead of him.

198.   Caucasian workers were hired into permanent positions by Zodiac more quickly than Mr. Jones who was offered a permanent post after twelve (12) months.

199.   Caucasian workers were given raises after becoming permanent with Zodiac, whereas Mr. Jones was not given a raise when he became permanent.

36

200.   Caucasian workers with less experience in the industry and less time on the job were promoted ahead of Mr. Jones, who has more than twenty-six (26) years of warehouse experience.

201.   The discrimination complained of was based upon Mr. Jones's race and altered the terms, conditions, and privileges of his employment.

202.   Zodiac acted in violation of 28 U.S.C. § 1981 ("Section 1981").

203.   Zodiac willfully and wantonly disregarded Mr. Jones's rights by discriminating against him in bad faith on the basis of his race.

204.   As a result of Zodiac's unlawful actions, Mr. Jones has suffered emotional distress, humiliation, and other indignities, as well as economic harm.

205.   Accordingly, Mr. Jones is entitled to compensatory and punitive damages, including back pay and benefits to which he would have been entitled had the discriminatory practices not occurred, and attorneys' fees and costs associated with bringing this action pursuant to 42 U.S.C. § 1981.

## COUNT VIII: RETALIATION IN VIOLATION OF TITLE VII OF PLAINTIFF JONES BY ZODIAC

206.   Mr. Jones incorporates by reference Paragraphs 1 through 46, Paragraphs 68 through 75, and Paragraph 100 as if fully set forth herein.

207.   Zodiac further subjected Mr. Jones to retaliation when it took an adverse employment action by giving him a written reprimand and a two day

unpaid suspension after he opposed an unlawful employment practice by filing a charge of racial discrimination with the EEOC.

208.   To prove retaliation, Mr. Jones asserts that: (1) he filed a charge of discrimination with the EEOC on August 4, 2014; and (2) after Zodiac was informed of this, Mr. Jones was given a written reprimand for being absent on a day that was previously approved as a day off, as well as, a two day unpaid suspension for requesting his personnel file.

209.   Zodiac acted in unlawful retaliation against Mr. Jones in violation of 42 U.S.C. § 2000e-3(a) ("Retaliation").

## COUNT IX: RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF PLAINTIFF DARROUX BY DEFENDANT ZODIAC AND DEFENDANT JSG

210.   Plaintiff Darroux incorporates by reference Paragraphs 1 through 46, Paragraphs 76 through 86, and Paragraph 100 as if fully set forth herein.

211.   Zodiac subjected Mr. Darroux to racial discrimination at its warehouse when it placed less experienced Caucasians in permanent positions ahead of Mr. Darroux, and promoted those Caucasians ahead of Mr. Darroux.

212.   At all times relevant, Defendant Zodiac was an "employer" as defined in 42 U.S.C. § 2000e(b).

213.   JSG subjected Mr. Darroux to racial discrimination when it knew or should have known of Zodiac's discrimination and JSG failed to take prompt corrective action.

214.   At all times relevant, Defendant JSG was an "employment agency" as defined in 42 U.S.C. § 2000e(c) as JSG is in the business of regularly procuring employees for opportunities to work for an "employer."

215.   As an employment agency, JSG was responsible for taking adequate corrective action after being put on notice that Mr. Darroux was being discriminated against by Zodiac.

216.   Because both entities exercised control over Mr. Darroux, both Defendant Zodiac and Defendant JSG are joint employers of Mr. Darroux under 29 C.F.R. 825.106.

217.   JSG was put on actual notice when in February of 2014 Mr. Darroux reported to both James Roberts and Alice Gant at JSG of the conditions he was working under while at Zodiac and that Caucasian workers with less experience were being placed in permanent positions ahead of Mr. Darroux, and Caucasians were being promoted ahead of Mr. Darroux. Mr. Roberts informed Mr. Darroux he would only create problems by complaining, and Ms. Gant attempted to find alternative placement positions.

218.   JSG was put on constructive notice and should have known that Mr. Darroux was being discriminated against by Zodiac because Mr. Darroux was not offered a permanent position after 90 days of working at the Zodiac warehouse and was not a permanent employee after working there for a year.

219.   JSG did not take adequate corrective action when informed of the discrimination against Mr. Darroux since JSG did not insist Zodiac conduct an investigation of the alleged discrimination, nor did JSG assert the right of Mr. Darroux to be free from unlawful discrimination, and JSG only told Mr. Darroux of one placement opportunity but never changed his placement

220.   To prove race discrimination, Mr. Darroux asserts that: (1) he is a member of a particular race; (2) he was subjected to an adverse employment action; and (3) he was treated less favorably than similarly situated employees who were not members of the same race.

221.   Mr. Darroux asserts that as an African-American, he is a member of a protected group.

222.   Mr. Darroux was subjected to an adverse employment action when: Caucasian workers were placed in permanent positions ahead of him; Caucasians with less experience in the industry as well as less time on the job were promoted ahead of him; and he was denied permanent employment.

223.   Caucasian workers were hired into permanent positions by Zodiac more quickly than Mr. Darroux who had never been offered a permanent post during the year he worked there.

224.   Caucasian workers with less experience in the industry and less time on the job were promoted ahead of Mr. Darroux, who has more than five (5) years of warehouse experience.

225.   The discrimination complained of was based upon Mr. Darroux's race and altered the terms, conditions, and privileges of his employment.

226.   Zodiac acted in violation of 42 U.S.C. § 2000e *et seq.* ("Title VII")

227.   Zodiac willfully and wantonly disregarded Mr. Darroux's rights by discriminating against him in bad faith on the basis of his race.

228.   As a result of Zodiac's unlawful actions, Mr. Darroux has suffered emotional distress, humiliation, and other indignities, as well as economic harm.

229.   JSG acted in violation of 42 U.S.C. § 2000e *et seq.* ("Title VII").

230.   JSG willfully and wantonly disregarded Mr. Darroux's rights by discriminating against him in bad faith on the basis of his race.

231.   As a result of JSG's unlawful actions, Mr. Darroux has suffered emotional distress, humiliation, and other indignities, as well as economic harm.

## COUNT X: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981 OF PLAINTIFF DARROUX BY DEFENDANT ZODIAC AND DEFENDANT JSG

232.   Plaintiff Darroux incorporates by reference Paragraphs 1 through 46, Paragraphs 76 through 86, and Paragraph 100 as if fully set forth herein.

233.   Zodiac subjected Mr. Darroux to racial discrimination at its warehouse when it placed less experienced Caucasians in permanent positions ahead of Mr. Darroux, and promoted those Caucasians ahead of Mr. Darroux.

234.   JSG subjected Mr. Darroux to racial discrimination when it knew or should have known of Zodiac's discrimination and JSG failed to take prompt corrective action.

235.   As an employment agency, JSG was responsible for taking adequate corrective action after being put on notice that Mr. Darroux was being discriminated against by Zodiac.

236.   Because both entities exercised control over Mr. Darroux, both Defendant Zodiac and Defendant JSG are joint employers of Mr. Darroux under 29 C.F.R. 825.106.

237.   JSG was put on actual notice when in June of 2014 Mr. Darroux reported to both James Roberts and Alice Gant at JSG of the conditions he was working under while at Zodiac and that Caucasian workers with less experience

were being placed in permanent positions ahead of Mr. Darroux, and Caucasians were being promoted ahead of Mr. Darroux. Mr. Roberts informed Mr. Darroux he would only create problems by complaining, and Ms. Gant attempted to find alternative placement positions.

238.   JSG was put on constructive notice and should have known that Mr. Darroux was being discriminated against by Zodiac because Mr. Darroux was not offered a permanent position after 90 days of working at the Zodiac warehouse and was not a permanent employee after working there for a year.

239.   JSG did not take adequate corrective action when informed of the discrimination against Mr. Darroux since JSG did not insist Zodiac conduct an investigation of the alleged discrimination, nor did JSG assert the right of Mr. Darroux to be free from unlawful discrimination, and JSG only told Mr. Darroux of one placement opportunity but never changed his placement.

240.   To prove race discrimination, Mr. Darroux asserts that: (1) he is a member of a particular race; (2) he was subjected to an adverse employment action; and (3) he was treated less favorably than similarly situated employees who were not members of the same race.

241.   Mr. Darroux asserts that as an African-American, he is a member of a protected group.

43

242. Mr. Darroux was subjected to an adverse employment action when: Caucasian workers were placed in permanent positions ahead of him; Caucasians with less experience in the industry as well as less time on the job were promoted ahead of him; and he was denied permanent employment.

243. Caucasian workers were hired into permanent positions by Zodiac more quickly than Mr. Darroux who had never been offered a permanent post during the year he worked there.

244. Caucasian workers with less experience in the industry and less time on the job were promoted ahead of Mr. Darroux, who has more than five (5) years of warehouse experience.

245. The discrimination complained of was based upon Mr. Darroux's race and altered the terms, conditions, and privileges of his employment.

246. Zodiac acted in violation of 28 U.S.C. § 1981 ("Section 1981").

247. Zodiac willfully and wantonly disregarded Mr. Darroux's rights by discriminating against him in bad faith on the basis of his race.

248. As a result of Zodiac's unlawful actions, Mr. Darroux has suffered emotional distress, humiliation, and other indignities, as well as economic harm.

249. JSG acted in violation of 28 U.S.C. § 1981 ("Section 1981").

250.   JSG willfully and wantonly disregarded Mr. Darroux's rights by discriminating against him in bad faith on the basis of his race.

251.   As a result of JSG's unlawful actions, Mr. Darroux has suffered emotional distress, humiliation, and other indignities, as well as economic harm.

252.   Accordingly, Mr. Darroux is entitled to compensatory and punitive damages, including back pay and benefits to which he would have been entitled had the discriminatory practices not occurred, and attorneys' fees and costs associated with bringing this action pursuant to 42 U.S.C. § 1981.

## COUNT XI: RETALIATION OF PLAINTIFF DARROUX BY DEFENDANT ZODIAC

253.   Plaintiff Darroux incorporates by reference Paragraphs 1 through 46, Paragraphs 76 through 86, and Paragraph 100 as if fully set forth herein.

254.   Zodiac further subjected Mr. Darroux to retaliation when it terminated him on August 6, 2014 after Mr. Darroux notified them of the racially hostile work environment two days prior.

255.   To prove retaliation, Mr. Darroux asserts that: (1) he notified Zodiac of the discrimination; and (2) after Zodiac was informed of this, Mr. Darroux was terminated two days later.

256.   Zodiac acted in unlawful retaliation against Mr. Darroux in violation of 42 U.S.C. § 2000e-3(a) ("Retaliation").

## COUNT XII: RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF PLAINTIFF THOMPSON BY DEFENDANT ZODIAC

257.   Plaintiff Thompson incorporates by reference Paragraphs 1 through 46 and Paragraphs 87 through 100 as if fully set forth herein.

258.   Zodiac subjected Mr. Thompson to racial discrimination at its warehouse when it paid Caucasians at a greater rate for equal work, placed less experienced Caucasians in permanent positions ahead of Mr. Thompson, and promoted those Caucasians ahead of Mr. Thompson.

259.   At all times relevant, Defendant Zodiac was an "employer" as defined in 42 U.S.C. § 2000e(b).

260.   To prove race discrimination, Mr. Thompson asserts that: (1) he is a member of a particular race; (2) he was subjected to an adverse employment action; and (3) he was treated less favorably than similarly situated employees who were not members of the same race.

261.   Mr. Thompson asserts that as an African-American, he is a member of a protected group.

262.   Mr. Thompson suffered adverse employment actions when: Caucasian workers were placed in permanent positions ahead of him; and Caucasians with

less experience in the industry as well as less time of the job were promoted ahead of him.

263.   Caucasian workers were hired into permanent positions by Zodiac more quickly than Mr. Thompson who was offered a permanent post after ten (10) months.

264.   Caucasian workers were given raises when becoming permanent with Zodiac, whereas Mr. Thompson was not given a raise when he became permanent.

265.   Caucasian workers with less experience in the industry and less time on the job were promoted ahead of Mr. Thompson, who has more than twenty (20) years of warehouse and supervisor experience.

266.   The discrimination complained of was based upon Mr. Thompson's race and altered the terms, conditions, and privileges of his employment.

267.   Zodiac acted in violation of 42 U.S.C. § 2000e *et seq.* ("Title VII").

268.   Zodiac willfully and wantonly disregarded Mr. Thompson's rights by discriminating against him in bad faith on the basis of his race.

269.   As a result of Zodiac's unlawful actions, Mr. Thompson has suffered emotional distress, humiliation, and other indignities, as well as economic harm.

## COUNT XIII: RACE DISCRIMINATION IN VIOLATION OF
## 42 U.S.C. § 1981 OF PLAINTIFF THOMPSON BY
## DEFENDANT ZODIAC

270.   Plaintiff Thompson incorporates by reference Paragraphs 1 through 46 and Paragraphs 87 through 100 as if fully set forth herein.

271.   Zodiac subjected Mr. Thompson to racial discrimination at its warehouse when it paid Caucasians at a greater rate for equal work, placed less experienced Caucasians in permanent positions ahead of Mr. Thompson, and promoted those Caucasians ahead of Mr. Thompson.

272.   To prove race discrimination, Mr. Thompson asserts that: (1) he is a member of a particular race; (2) he was subjected to an adverse employment action; and (3) he was treated less favorably than similarly situated employees who were not members of the same race.

273.   Mr. Thompson asserts that as an African-American, he is a member of a protected group.

274.   Mr. Thompson suffered adverse employment actions when: Caucasian workers were placed in permanent positions ahead of him; and Caucasians with less experience in the industry as well as less time on the job were promoted ahead of him.

275.   Caucasian workers were hired into permanent positions by Zodiac more quickly than Mr. Thompson who was offered a permanent post after ten (10) months.

276.   Caucasian workers were given raises when becoming permanent with Zodiac, whereas Mr. Thompson was not given a raise when he became permanent.

277.   Caucasian workers with less experience in the industry and less time on the job were promoted ahead of Mr. Thompson, who has more than twenty (20) years of warehouse and supervisor experience.

278.   The discrimination complained of was based upon Mr. Thompson's race and altered the terms, conditions, and privileges of his employment.

279.   Zodiac acted in violation of 28 U.S.C. § 1981 ("Section 1981").

280.   Zodiac willfully and wantonly disregarded Mr. Thompson's rights by discriminating against him in bad faith on the basis of his race.

281.   As a result of Zodiac's unlawful actions, Mr. Thompson has suffered emotional distress, humiliation, and other indignities, as well as economic harm.

282.   Accordingly, Mr. Thompson is entitled to compensatory and punitive damages, including back pay and benefits to which he would have been entitled had the discriminatory practices not occurred, and attorneys' fees and costs associated with bringing this action pursuant to 42 U.S.C. § 1981.

49

WHEREFORE, Plaintiffs respectfully demands a TRIAL BY JURY and for the following relief:

(a)     Declaratory judgment that Defendants Zodiac Services Americas LLC,  PDS Tech, Inc., and Johnson Service Group, Inc. engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. 2000e *et seq.*, and 42 U.S.C. § 1981;

(b)     An injunction prohibiting Defendants Zodiac Services Americas LLC, PDS Tech, Inc., and Johnson Service Group, Inc. from engaging in unlawful employment practices in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981;

(c)     Back pay, front pay, benefits, insurance costs, bonuses, raises, training, promotions, and seniority that Plaintiffs would have received had Defendants not engaged in their discriminatory practices;

(d)     Defendants be ordered to pay interest on the eligible amounts at the legal rate;

(e)     Compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for all Plaintiffs' emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life;

(f)     Punitive damages;

(g)    Reasonable attorneys' fees and costs; and

(h)    Such other and further relief as this court deems proper.

Respectfully submitted this 29th day of December, 2014.

Elizabeth Ann Morgan
Georgia Bar No. 522206
Daniel B. Millman
Georgia Bar No. 603728
Lauren W. Brenner
Georgia Bar No. 364286
THE MORGAN LAW FIRM P.C.
260 Peachtree Street
Suite 1601
Atlanta, Georgia 30303
TEL: (404) 496-5430
morgan@morganlawpc.com
millman@morganlawpc.com
brenner@morganlawpc.com
*Counsel for Plaintiffs*